UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DEAN RAYMOND,

        Plaintiff,

  v.                                       23-CV-552-LJV-JJM
                                              DECISION & ORDER
KARL P. BRUSINO, et al.,

        Defendants.

───────────────────────────────

On June 16, 2023, the plaintiff, Dean Raymond, commenced this action under 42 U.S.C. § 1983 against six police officers employed by the City of Niagara Falls ("Niagara Falls") and certain unidentified employees of the Niagara County Sheriff's Office. Docket Item 1. In his complaint, Raymond alleged that the defendants, sued in both their individual and official capacities, violated his constitutional rights during a July 2021 raid on his apartment. *See id.* Raymond subsequently amended his complaint to specifically identify two Niagara County Sheriff's Office employees as defendants. Docket Item 17.

On August 14, 2023, this Court referred the case to United States Magistrate Judge Jeremiah J. McCarthy for all proceedings under 28 U.S.C. § 636(b)(1)(A). Docket Item 7. On April 26, 2024, Raymond moved to amend his complaint a second time to add the City of Niagara Falls and Niagara County as defendants liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), Docket Item 37; on May 6, 2024, the existing Niagara Falls and Niagara County defendants responded, Docket Items 39 and 40; and on May 10, 2024, Raymond

replied, Docket Item 41.  On July 8, 2024, Judge McCarthy issued a Report and Recommendation ("R&R") finding that Raymond's motion to amend should be denied as futile.  Docket Item 42 at 5.[1]

Two weeks later, Raymond objected to the R&R on the grounds that Judge McCarthy erred in finding that the proposed *Monell* claims were futile.[2]  Docket Item 43.  On August 12, 2024, the defendants responded to the objections, Docket Items 46 and 47, and on August 25, 2024, Raymond replied, Docket Item 48.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review de novo those portions of a magistrate judge's dispositive recommendation to which a party objects.[3]  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

---

[1] Page numbers in docket citations refer to ECF pagination.

[2] More specifically, Raymond says that Judge McCarthy erred by (1) conducting "an overly stringent application of the plausibility standard at the pleading stage and . . . misappl[ying] . . . the law regarding *Monell* claims," Docket Item 43 at 3-5; (2) "applying a standard more akin to summary judgment than the proper standard for evaluating a proposed amended complaint," *id.* at 6; (3) improperly "refusing to consider factual allegations presented in [Raymond]'s briefing that supported the plausibility of the *Monell* claims," *id.* at 6-7; (4) "incorrectly conclud[ing] that [Raymond]'s alternative allegations regarding [Niagara Falls's and Niagara County's] body camera policies were contradictory and therefore implausible," *id.* at 7-8; (5) "concluding that allegations based on a single incident are insufficient to state plausible *Monell* claims," *id.* at 9; and (6) misinterpreting "the proposed amended complaint, particularly with respect to the allegations regarding the officers' failure to wear body cameras and the lack of punishment for this failure," *id.* at 10-11.

[3] Because Judge McCarthy's decision on the motion to amend is dispositive insofar as he found the amended pleading futile, this Court must review that decision de novo.  *See S. Buffalo Dev., LLC v. PVS Chem. Sols., Inc.*, 675 F. Supp. 3d 320, 325 (W.D.N.Y. 2023).  The defendants argue that this Court nevertheless should review the R&R only for clear error because Raymond's objections merely repeat the arguments he made to Judge McCarthy.  *See* Docket Item 46 at 2 ("[T]he arguments set forth in [Raymond's] objections essentially mirror those found in support of his motion to amend."); Docket Item 47 at 4-5 (describing Raymond's objections as "essentially a

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, response, and reply; and the materials submitted to Judge McCarthy. Based on that de novo review, the Court accepts and adopts Judge McCarthy's recommendation to deny Raymond's motion for leave to file a second amended complaint.

## **LEGAL PRINCIPLES**

Federal Rule of Civil Procedure 15(a)(2) provides that a "court should freely give leave [to amend] when justice so requires." This "permissive standard . . . is consistent with [the Second Circuit's] strong preference for resolving disputes on the merits." *Loreley Financing (Jersey) No. 3. Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (citation and internal quotation marks omitted). The decision "to grant or deny leave to amend" is nevertheless committed to "the sound discretion of the district court." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.*

"[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a

---

regurgitation of the arguments that were made in support of the motion for leave to amend"). Because this Court agrees with Judge McCarthy's recommendation regardless of the standard of review, it makes no difference whether the R&R is reviewed de novo or for clear error.

3

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION[4]

At issue are two alternative allegations against the City of Niagara Falls and Niagara County included in the proposed second amended complaint. *See* Docket Item 37-2 at ¶¶ 125-52. First, Raymond alleges that both municipalities had official policies requiring on-duty police officers and deputies to wear and activate body cameras, but also had policies, either "shadow" or "affirmative," permitting detectives and "Sheriff's Office personnel" serving warrants "to be exempt from the body camera requirement that applied to other" officers or deputies. *Id*. at ¶¶ 127, 141. In the alternative, Raymond alleges that the City of Niagara Falls and Niagara County each had body camera policies applying to "patrol officers" and "patrol deputies and other personnel," respectively, but lacked policies requiring detectives or Niagara County Sheriff's Office

---

[4] The Court assumes the reader's familiarity with the facts alleged in the amended complaint, *see* Docket Item 17, and the proposed second amended complaint, *see* Docket Item 37-2, along with Judge McCarthy's analysis in the R&R, *see* Docket Item 42. This decision will refer to the underlying facts only as necessary.

4

personnel "to wear body cameras during their law enforcement activities such as the execution of warrants." *Id.* at ¶¶ 134, 148.

## I.     PLEADING IN THE ALTERNATIVE

As a preliminary matter, the Court addresses Raymond's objection that Judge McCarthy erred by preventing him from pleading in the alternative. Docket Item 43 at 7-8. According to Raymond, Judge McCarthy "incorrectly concluded" that his alternative claims (that the municipal defendants either lacked policies requiring the use of body cameras or had policies requiring cameras but exempted certain individuals) "were contradictory and therefore implausible." *Id.*

Raymond is correct that alternative pleading is expressly permitted by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out [two] or more statements of a claim alternatively or hypothetically, either in a single count or defense or in separate ones."). And Raymond is correct that the alternatives may be inconsistent with one another. *See Padre Shipping, Inc. v. Yong He Shipping*, 553 F. Supp. 2d 328, 333 (S.D.N.Y. 2008) ("[P]laintiffs are allowed to assert inconsistent facts in support of alternative claims, and courts may not construe allegations regarding one claim to be an admission against another."). But even though a party may plead alternative claims supported by inconsistent facts, the claims still must be plausible to survive dismissal. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001) ("Accordingly, if no alternative claim sufficiently stands alone, the pleading flexibility the [r]ule extends is unavailing.").

Judge McCarthy conducted precisely that analysis. He first noted that Raymond could plead in the alternative under Rule 8(d)(2), but he then observed that Raymond

5

had raised only "conclusory assertions regarding the existence of [body camera policies], or lack thereof." Docket Item 42 at 4. As this Court discusses in more detail below, *see infra* Section III, Judge McCarthy's analysis centered on the plausibility of the *Monell* claims based on allegations of a single instance of a constitutional violation, finding that the single incident in Raymond's proposed amendment could not establish either the lack of body camera policies or the existence of exemptions. And regardless of whether that finding was correct, Judge McCarthy clearly did not prevent Raymond from pleading in the alternative.

## II.   FACTUAL ALLEGATIONS RAISED IN RAYMOND'S BRIEFING

Raymond also objects to the R&R on the grounds that Judge McCarthy "erred in refusing to consider factual allegations presented in [Raymond]'s briefing that supported the plausibility of the *Monell* claims." Docket Item 43 at 6-7. Courts "may consider factual allegations in a party's opposition papers when deciding a motion to dismiss," Raymond says, "particularly where those allegations are consistent with the complaint and could be added in an amended pleading." *Id*. at 7. And he argues that Judge McCarthy erred when he evaluated the proposed amended pleading and did not consider the facts asserted in Raymond's memorandum of law. *Id.* This Court disagrees.

Motions to amend are reviewed "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006). This means that the Court is limited to the facts contained in the proposed amended complaint "and does not consider any exhibits [other than] those included or incorporated by reference in the complaint or the [proposed amended complaint]." *See*

6

*Arnold v. Rsch. Found. for the State Univ. of New York*, 216 F. Supp. 3d 275, 284 (E.D.N.Y. 2016).  Moreover, when alleged facts do not come from affidavits or exhibits but rather from a memorandum of law, it is a "well[-]settled rule that 'factual allegations contained in legal briefs or memoranda are treated as matters outside the pleading.'" *Concepcion v. City of New York*, 2008 WL 2020363, at *10 (S.D.N.Y. May 7, 2008) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988) (alterations omitted)).

The cases Raymond cites in his objection, *see* Docket Item 43 at 7, to support the proposition that courts may consider factual allegations raised in the legal briefing are unavailing: unlike this case, all those cases involved pro se parties who were given considerable deference because they did not have legal representation.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013); *Karcz v. City of North Tonawanda*, 2023 WL 2654210, at *1 (W.D.N.Y. Feb. 24, 2023);[5] *Small v. City of New York*, 2022 WL 376030, at *4 (S.D.N.Y. Feb. 7, 2022).  Given the fact that Raymond is not pro se but is represented by experienced counsel, Judge McCarthy did not err in declining to consider allegations omitted from the proposed pleading and first raised in Raymond's briefing.[6]

---

[5] In *Karcz*, the plaintiff filed his complaint pro se and then, represented by counsel, sought to amend his complaint in response to a motion to dismiss.  2023 WL 2654210, at *1.  The facts alleged in that plaintiff's proposed amended complaint were then considered in resolving those motions.  *Id.* at *3-4.  Furthermore, all references to the plaintiff's briefing in *Karcz* appear to be recitations of the plaintiff's arguments—not statements of facts being considered in evaluating the motions at issue.  *See id.*

[6] To the extent Raymond claims that these allegations show that he "could easily amend the complaint to include these additional supporting facts," Docket Item 43 at 7, such further amendment still would be futile for the reasons discussed below, *see infra* Section III.

### III.    *MONELL*

Raymond's remaining objections relate to Judge McCarthy's review of the sufficiency of his proposed *Monell* claims against the City of Niagara Falls and Niagara County. Judge McCarthy deemed the proposed amendments futile because they included only conclusory allegations about the municipalities' policies (or lack thereof) and a single incident of alleged misconduct. Docket Item 42 at 4. In objecting to the R&R, Raymond says that Judge McCarthy's analysis of his proposed claims was "overly stringent," *see* Docket Item 43 at 3-6, 10-11; that a single instance of alleged misconduct can be sufficient to establish *Monell* liability, *id.* at 4, 9; and that Judge McCarthy "fail[ed] to draw [the] reasonable inferences from the allegations actually made in the proposed amended complaint"—that is, that the law enforcement officers who raided Raymond's apartment were not wearing body cameras and were not punished for their failure to do so, *id.* at 10-11.

Under *Monell,* municipalities are subject to section 1983 liability based on their employees' conduct only when the plaintiff's injury is "inflicted" by the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." See 436 U.S. at 694; *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992). To state a *Monell* claim, a plaintiff must plead three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.3d 393, 397 (2d Cir. 1983)).

A section "1983 plaintiff need not prove that his injury was caused by an explicitly stated municipal rule or regulation." *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d

8

Cir. 2018). "Absent an express municipal policy, [a] plaintiff may prove a municipal custom, policy[,] or practice in several ways." *Ramos v. County of Suffolk*, 2009 WL 10708571, at *2 (E.D.N.Y. Sept. 8, 2009). For instance, a plaintiff might show a "policymaker's acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *See Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (citation and internal quotation marks omitted). Alternatively, a plaintiff can show that the municipality "fail[ed] to act" and in doing so "exhibited deliberate indifference to constitutional deprivations caused by subordinates." *See Outlaw*, 884 F.3d at 372-73 (alteration and citation omitted). "[T]o proceed on a deliberate[]indifference theory, a plaintiff must first establish 'that the need for more or better supervision to protect against constitutional violations was obvious.'" *Id.* at 373 (second set of internal quotation marks omitted) (quoting *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 127 (2d Cir. 2004)).

Although Raymond does not specify the type of *Monell* claims he tries to bring in his proposed second amended complaint, he seems to assert two theories of liability: 1) the existence (or non-existence) of a custom, policy, or practice and 2) deliberate indifference on the part of municipal policymakers. The Court will address the plausibility of each in turn.

    **A.**    **The Plausibility of Raymond's Proposed *Monell* Claims**

        **1.**    **Custom, Policy, or Practice**

Raymond alleges that the City of Niagara Falls and Niagara County violated his rights in one of two ways: They implemented policies, either "shadow" or "affirmative," permitting police detectives and sheriff's office personnel "to be exempt" from broader

body camera policies while serving warrants, Docket Item 37-2 at ¶¶ 127-28, 141-42, or they failed to implement policies requiring police detectives or sheriff's office personnel "to wear body cameras during their law enforcement activities such as the execution of warrants," *id.* at ¶¶ 134, 148.

But typically speaking, "a custom[,] . . . policy[, or practice] cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality]." *See Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). And Raymond does not allege anything other than this incident in support of his otherwise bald allegations.

Even worse, Raymond's proposed amendment does not even allege that the municipal employees—that is, the officers who raided his apartment in July 2021— acted in accordance with the alleged offensive custom, policy, or practice or contrary to the good one. For example, the proposed second amended complaint does not allege that they were not wearing body cameras, or that they were wearing body cameras but turned them off during the raid. Indeed, Raymond did not raise such allegations until his reply brief in support of his motion to amend, when he finally claimed that "none of the numerous [Niagara Falls] or [Niagara] County officers who participated in the raid were wearing body cameras, in direct contravention of official written policies," but were not "punished for their policy violations." Docket Item 41 at 3. As the Court discussed above, *see supra* Section II, Judge McCarthy did not err in declining to consider those allegations.

And even if Raymond had made those allegations in his proposed pleading, they still would not state a plausible *Monell* claim. In essence, Raymond says that because

10

the detectives and deputies who raided his apartment did not use body cameras, the two municipalities must either 1) not have had a policy requiring the use of body cameras or 2) had policies exempting certain employees from using body cameras while serving warrants.

But nowhere in his proposed amendments—or even in his briefing—does Raymond allege any other time when Niagara Falls or Niagara County law enforcement officers did not wear body cameras, either during the execution of a warrant or while performing other duties. And as courts throughout the Second Circuit routinely hold at the pleading stage, a single incident is not enough to establish a custom, policy, or practice under circumstances like these. *See, e.g.*, *D.J. by Comfort v. Corning-Painted Post Area Sch. Dist.*, 722 F. Supp. 3d 148, 162 (W.D.N.Y. 2024) (Wolford, C.J.) ("In other words, [p]laintiff has failed to plausibly allege that the conduct at issue was part of a persistent or widespread discriminatory practice or amounted to anything other than a single incident of alleged unconstitutional activity, which is insufficient under *Monell*."); *Bird v. County of Westchester*, 2022 WL 2263794, at *12 (S.D.N.Y. June 23, 2022) ("Plaintiff fails to allege the existence of any other similar incident, which dooms [p]laintiff's claim because a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the municipality." (citation and internal quotation marks omitted)); *Santana v. City of New York*, 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018) ("[A] 'single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.'" (quoting *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998))).

That absence of other allegations is even more acute here, where Raymond's amended complaint and proposed second amended complaint both allege that he interacted with three of the individual defendants before the raid. Docket Item 17 at ¶¶ 14-19; Docket Item 37-2 at ¶¶ 20-25. Raymond does not say anything about whether those law enforcement officers wore or did not wear body cameras during that interaction—allegations that might shed some light on his claims. In other words, Raymond does not say that law enforcement did not use body cameras during his earlier interaction, which might lend support to his unsupported assertion that the two municipalities lacked policies requiring detectives or "Sheriff's Office personnel" to wear body cameras "during their law enforcement activities."[7] *See* Docket Item 37-2 at ¶¶ 134, 148.

In fact, Raymond never even says that Niagara Falls detectives or "Sheriff's Office personnel" employed by Niagara County had a single interaction with another citizen when they were not wearing body cameras. Even construing the allegations in the proposed second amended complaint in the light most favorable to Raymond, they

---

[7] As the Niagara County defendants correctly noted in opposing Raymond's proposed amendment, Docket Item 40-1 at 12-13, "the absence of a policy is not a policy," and so the absence of a policy ordinarily "is not actionable under *Monell*." *See Zachary v. City of Newburgh*, 2014 WL 1508705, at *5 (S.D.N.Y. Apr. 1, 2014). In cases where a municipality "does not have an adequate policy . . . *Monell* liability exists 'where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions.'" *Fraser v. City of New York*, 2021 WL 1338795, at *10 (S.D.N.Y. Apr. 9, 2021) (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007)). As discussed above, Raymond does not allege any other instances of misconduct by employees of either the City of Niagara Falls or Niagara County, so his proposed second amended complaint falls far short of demonstrating the type of pattern that might make an alleged lack of a policy actionable under *Monell*.

suggest nothing more than one incident of allegedly unconstitutional conduct. And as Judge McCarthy found, Docket Item 42 at 4, that is not enough for *Monell* liability.

What is more, even if all that were not true—even if Raymond had plausibly alleged the lack of a policy requiring detectives or "Sheriff's Office personnel" to use body cameras or an exemption from such a policy when serving warrants—his *Monell* claim still would fail because there is no causal link between those allegations and the injury he allegedly suffered. According to the first two versions of Raymond's complaint and now his proposed second amended complaint, his rights were abridged when law enforcement officers beat him while executing a search warrant at his apartment. *See* Docket Item 1 at ¶¶ 30-51; Docket Item 17 at ¶¶ 31-52; Docket Item 37-2 at ¶¶ 37-58. Based on those circumstances, the sort of alleged municipal custom, policy, or practice that might give rise to a viable *Monell* claim would be one that encouraged or condoned the use of excessive force by officers.

Raymond tries to connect his alleged injury with either the supposed lack of a body camera policy or policies permitting exemptions based solely on speculation about how law enforcement officers are likely to behave without body cameras. That thin connection is not enough. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n.8 (1985) (plurality opinion) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation."); *see also Green v. City of Mount Vernon*, 96 F. Supp. 3d 263, 301 (S.D.N.Y. 2015). In other words, Raymond cannot allege that he was injured because the law enforcement officers did not use body cameras, and his claim of *Monell* liability based on exemptions from a policy requiring officers to use body

13

cameras or the lack of such a policy therefore fails.  *See Usavage v. Port Auth. of New York & New Jersey*, 932 F. Supp. 2d 575, 601 (S.D.N.Y. 2013) (deeming plaintiff's theory that defendant's policy permitting internal investigators to determine which video footage to provide to passengers following incidents and then deleting all non-preserved footage led to the use of excessive force was "extraordinarily attenuated—so attenuated that, in the relevant sense of the term, [defendant]'s policy of preserving video footage cannot be said to have caused the alleged excessive use of force.").

  To hold otherwise would require a breathtaking logical leap: that because there was no policy requiring body cameras to be used by law enforcement during law enforcement activities, or because certain law enforcement officers were exempt from such a policy when executing warrants, the municipalities were complicit in the excessive use of force.  That logical leap is neither appropriate nor warranted.  Indeed, if what Raymond suggests is true, then whenever excessive force was used by a police officer, the municipality employing that officer would face *Monell* liability unless it required the use of body cameras.  And that is not the law.  *See Wooden v. City of Philadelphia*, 2022 WL 17724423, at *4 (E.D. Pa. Dec. 15, 2022) ("Courts that have addressed the issue have universally rejected the theory that a failure to provide or conduct recording of certain law enforcement activities satisfies the constitutional violation, deliberate indifference, or causation requirements of *Monell*." (italics added)); *see also Barnes v. City of El Paso*, 677 F. Supp. 3d 594, 615-16 (W.D. Tex. 2023) (dismissing *Monell* claim "predicated on the failure to equip officers with body cameras" where plaintiff offered no "factual allegations that might give rise to a causal inference,

such as allegations about reports or statistics showing the effect of body-worn cameras in other cities").

In sum, Raymond has not alleged a viable *Monell* claim both because his proposed pleading is factually deficient and because his theory of liability is faulty. For either and both of those reasons, his objection to Judge McCarthy's R&R is misplaced.

### 2. Deliberate Indifference

Raymond's proposed pleading does not specifically allege a failure to train, supervise, or discipline on the part of the City of Niagara Falls or Niagara County. But by repeatedly referring to "deliberate indifference," he seems to suggest that the municipalities' failure to act here demonstrates their failure to educate law enforcement about the constitutional rights of citizens, or to properly supervise or discipline law enforcement, and thus gives rise to *Monell* liability. *See* Docket Item 37-2 at ¶¶ 128, 142 (asserting that permitting the execution of warrants "without the accountability and oversight provided by body cameras . . . demonstrated deliberate indifference"); *id.* at ¶¶ 135, 149 (asserting that the alleged lack of body camera policies "demonstrated deliberate indifference"). That legal theory fails as well.

In limited circumstances, a municipality may be held liable for its failure to train, supervise, or discipline its employees. *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983) ("[P]ersistent failure to discipline" employees may show a "policy of ratification of unconstitutional conduct."). "Where plaintiffs seek to hold a municipality liable under a theory of failure to [train,] supervise[,] or discipline, . . . they must also show that the municipal policymaker acted with deliberate indifference." *Pipitone v. City of New York*, 57 F.

15

Supp. 3d 173, 191 (E.D.N.Y. 2014) (citing *City of Canton v. Harris*, 489 U.S. 378, 388-89) (1989)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (alteration, citation, and internal quotation marks omitted). "To establish 'deliberate indifference,' a plaintiff must show that: [1] a policymaker knows 'to a moral certainty' that city employees will confront a particular situation; [2] the situation either presents the employee with 'a difficult choice of the sort that training or supervision will make less difficult' or 'there is a history of employees mishandling the situation;' and [3] 'the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights.'" *Wray*, 490 F.3d at 195-96 (citation omitted).

Even considering the facts first raised in Raymond's reply brief, the only allegation supporting a failure to train, supervise, or discipline theory is Raymond's statement that the officers participating in the raid on his apartment did not wear body cameras and were not "punished." *See* Docket Item 41 at 3. But as courts within the Second Circuit routinely hold, establishing deliberate indifference requires more than a single instance of failing to discipline. *See, e.g.*, *Santiago v. City of Rochester*, 2022 WL 856780, at *4 (W.D.N.Y. Mar. 23, 2022); *Askew v. Lindsey*, 2016 WL 4992641, at *5 (S.D.N.Y. Sept. 16, 2016) (collecting cases holding that a single failure to discipline "cannot give rise to an inference of deliberate indifference without further evidence of a municipal policy or practice").

In his objections, Raymond says that "[i]n some circumstances, a single incident can be sufficient to establish" deliberate indifference for purposes of *Monell* liability. Docket Item 43 at 4, 9 (citing *Canton*, 489 U.S. at 390). And he may be correct. But "[w]hile the Supreme Court has left open the possibility that a single incident could give rise to liability for failure to train or supervise, the Court has cautioned that only a 'narrow range' of circumstances would support such single-incident liability, where the 'unconstitutional consequences of failing to train [or supervise were] patently obvious.'" *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469, 475 (W.D.N.Y. 2013), *aff'd*, 556 F. App'x 5 (2d Cir. 2014) (summary order) (quoting *Connick*, 563 U.S. at 64). That is not the case here.

The example given by the Supreme Court in *Connick* is instructive: The Supreme Court used the example of "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63 (citing *Canton*, 489 U.S. at 390 n.10). In such a case, "[g]iven the known frequency with which police attempt to arrest fleeing felons and the 'predictability that an officer lacking specific tools to handle that situation will violate citizens' rights,'" a municipality's failure to train its officers "could reflect the city's deliberate indifference to the 'highly predictable consequence[s]'" of the untrained officers' actions. *Id.* at 63-64 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

Not so here. First, Raymond has not even raised an explicit claim that the two municipalities failed to train law enforcement. Second, the implicit claim alleges nothing more than the particular circumstances of the single raid on his apartment. He does not

17

allege other incidents that would put municipal policymakers on notice of the risk of constitutional violations from not requiring employees to wear body cameras. He does not allege any facts about the frequency with which City of Niagara Falls or Niagara County law enforcement officials encounter situations like the raid he describes. Indeed, other than the incident at issue, he does not point to a single failure to discipline. And even with respect to this incident, he does not even suggest that a municipal policymaker learned about the failure to wear body cameras during the raid on Raymond's apartment so that they could have disciplined the officers involved.

Raymond's proposed second amended complaint therefore falls well short of plausibly alleging the deliberate indifference on the part of a municipal policymaker that might possibly give rise to *Monell* liability. Accordingly, the Court agrees with Judge McCarthy's conclusion that the proposed amendments are futile.

### B.     Raymond's Remaining Objections

Raymond raises two other objections involving Judge McCarthy's analysis of the plausibility of his proposed *Monell* claims.

First, Raymond says that Judge McCarthy applied "a standard more akin to summary judgment" in evaluating his proposed amendments, which was particularly unfair because the "specific details" of "body camera policies (or lack thereof) are peculiarly within [Niagara Falls's and Niagara County's] possession and control." Docket Item 43 at 6; *see also id.* at 4 ("[T]he Supreme Court [has] rejected the notion that *Monell* claims are subject to a 'heightened pleading standard,' emphasizing that federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims." (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. &*

*Coordination Unit*, 507 U.S. 163, 168-69 (1993))). But Judge McCarthy did not apply the summary judgment standard when he evaluated Raymond's proposed amended pleading; instead, he correctly applied the well-established plausibility standard under *Twombly* and *Iqbal*. *See* Docket Item 42 at 3 (quoting *Iqbal*, 556 U.S. at 678). And for the reasons already discussed, this Court agrees with Judge McCarthy's conclusion that Raymond's proposed *Monell* claims are not plausible under that standard.[8]

Second, Raymond says that Judge McCarthy erred by "fail[ing] to draw [the] reasonable inferences" from the allegations in his proposed second amended complaint that the law enforcement officers conducting the raid on his apartment failed to wear body cameras and were not punished for that failure. Docket Item 43 at 10-11. But regardless of whether Judge McCarthy drew those inferences, Raymond's proposed *Monell* claims are futile for the reasons already addressed.

### IV. LEAVE TO AMEND

Finally, Raymond asks for leave to re-plead so that he can add the allegations first raised in his reply brief. *Id.* at 11-12. Because this Court has concluded that Raymond's proposed *Monell* claims are futile even with those allegations, *see supra* Section III, that request is denied.

---

[8] Raymond's cite to *Leatherman* is misplaced, as *Leatherman* predated the Supreme Court's decisions in *Twombly* and *Iqbal*. *Leatherman* also did not establish a lesser pleading standard for *Monell* claims, which still "must meet the plausibility requirements of [*Twombly*] and [*Iqbal*]." *See Guzman v. United States*, 2013 WL 5018553, at *4 (S.D.N.Y. Sept. 13, 2013).

**CONCLUSION**

For the reasons stated above and in the R&R, Raymond's motion for leave to file a second amended complaint, Docket Item 37, is DENIED. The case is referred back to Judge McCarthy for further proceedings consistent with the referral order of August 14, 2023, Docket Item 7.

SO ORDERED.

Dated:   February 12, 2025
         Buffalo, New York

                                       /s/ Lawrence J. Vilardo
                                       LAWRENCE J. VILARDO
                                       UNITED STATES DISTRICT JUDGE